1

<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2      - - - - - - - - - - - - - - X
          UNITED STATES OF AMERICA,   :   22-CR-00208 (CBA)
 3                                     :
                                       :
 4                                     :   United States Courthouse
              -against-               :   Brooklyn, New York
 5                                     :
                                       :
 6                                     :   July 13, 2023
                                       :   11:00 a.m.
 7        QING YU, ANTONY ABREU,       :
          and ZHE ZHANG,               :
 8                                     :
              Defendants.              :
 9      - - - - - - - - - - - - - - X

10          TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE CAROL BAGLEY AMON
11               UNITED STATES SENIOR DISTRICT JUDGE

12

13               A P P E A R A N C E S :

14
        For the Government:        BREON PEACE, ESQ.
15                                 United States Attorney
                                   Eastern District of New York
16                                 271 Cadman Plaza East
                                   Brooklyn, New York 11201
17
                                   BY:  DEVON LASH, ESQ.
18                                      GABRIEL PARK, ESQ.
                                        Assistant United States Attorneys
19

20      For Deft Yu:               LAW OFFICE OF JAMES KOUSOUROS
                                   260 Madison Avenue, 22nd Floor
21                                 New York, NY 10016

22                                 BY:  JAMES KOUSOUROS, ESQ.
                                        EVAN LIPTON, ESQ.
23

24      For Deft Abreu:            SUSAN G. KELLMAN, ESQ.
                                   25 Eighth Avenue
25                                 Brooklyn, NY 11217
</pre>

*Proceedings*                                                                    2

```
 1              A P P E A R A N C E S: (Continued)

 2   For Deft Abreu:          MOSKOWITZ COLSON
                              GINSBERG & SCHULMAN LLP
 3                            80 Broad Street, 19th Floor
                              New York, NY 10004
 4
                              BY:  EYLAN SCHULMAN, ESQ.
 5

 6   For Deft Zhang:          MEISTER SEELING & FEIN LLP
                              125 Park Avenue, 7th floor
 7                            New York, NY 10017

 8                            BY:  HENRY E. MAZUREK, ESQ.
                                   JASON SER, ESQ.
 9

10   Court Reporter:          DENISE PARISI, RPR, CRR
                              225 Cadman Plaza East
11                            Brooklyn, New York 11201
                              Telephone: (718) 613-2605
12                            E-mail: DeniseParisi72@gmail.com

13   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
14

15                   *     *     *     *     *

16           (In open court.)

17           THE COURTROOM DEPUTY:  Good morning.  This is

18   criminal cause for a status conference, 22-CR-208, USA versus

19   Qing Yu, Antony Abreu, and Zhe Zhang.

20           May the parties please state your name for the

21   record starting with the Government.

22           MS. LASH:  Good morning, Your Honor.

23           Devon Lash and Gabriel Park on behalf of the United

24   States.

25           THE COURT:  Good morning.
```

*Proceedings*                                                    3

1          MR. KOUSOUROS:  Good morning, Your Honor.

2          James Kousouros for Mr. Yu.

3          MS. KELLMAN:  Good morning, Your Honor.

4          Susan Kellman and I'm assisted by co-counsel Eylan

5   Schulman for Mr. Abreu.

6          Good morning, Judge.

7          THE COURT:  Good morning.

8          MR. MAZUREK:  Good morning, Your Honor.

9          Henry Mazurek and Jason Ser on behalf of Zhe Zhang,

10  who is also present.

11         MR. LIPTON:  Good morning, Your Honor.

12         Evan Lipton also on behalf of Qing Yu, along with

13  Mr. Kousouros.

14         THE COURT:  Okay.

15         All right.  Everyone can be seated.

16         There have been outstanding suppression motions.

17  I'm just going to give you the bottom line on those motions

18  and an opinion will follow which sets forth the reasoning

19  behind the decision.

20         As to the defendant Yu's motion to suppress the Yu

21  premises warrant, that's denied in its entirety, as is the

22  defendant Yu's motion for a Franks hearing.

23         The defendant Zhang's motion to suppress the Zhang

24  premises warrant in Instagram warrant is denied with respect

25  to the murder-for-hire crime and witness retaliation, but I'm

*Proceedings*                                                            4

1    granting the motion to suppress the narcotics.

2              The defendant Zhang's motion for a bill of

3    particulars is denied.

4              I think the other issues --

5              MR. MAZUREK:  Judge, I think you mentioned the

6    Instagram account, but what about -- it's also the --

7              THE COURT:  Instagram warrant, I'm sorry.

8              MR. MAZUREK:  The Instagram warrant.  And what about

9    the Zhang premises?

10             THE COURT:  No, I'm sorry.  I thought I said

11   premises.  Maybe I --

12             MR. MAZUREK:  You said Instagram account.

13             THE COURT:  I thought I said both, but maybe I

14   skipped over it.

15             MR. MAZUREK:  Oh, sorry.

16             THE COURT:  Did you hear it, Ms. Kellman?

17             MS. KELLMAN:  I did, Your Honor.

18             THE COURT:  Oh, thank you.  I can always count on

19   Ms. Kellman to back me up on this.

20             Okay.  But, as I said, ladies and gentlemen, an

21   opinion will follow.

22             I think all the other issues that had been raised at

23   the last hearing were either resolved or moot.  I denied the

24   defendant Yu's motion for reconsideration of bail pretrial.

25             The defendant Yu's motion for the return of six

*Proceedings*                                                        5

1  items which contends were seized beyond the scope of the

2  search warrant, I think, is moot in light of the Government's

3  agreement to return those items.

4          The defendant Zhang's motion for return of property,

5  including five electronic devices that had not yet been

6  encrypted, is, as I understand it, moot in light of the

7  Government's agreement to return those items.

8          The defendants Zhang's motion that five cell phones

9  were searched beyond the time period permitted by the search

10  warrant based on certain extraction reports, I believe, is

11  moot in light of the Government's affidavit attesting to

12  having completed the searches within the appropriate deadline.

13          There is a recent letter regarding discovery that

14  Mr. Mazurek filed.  I don't know that the Government has had

15  the time to review that letter, or can you address that today?

16          MS. LASH:  Certainly, Your Honor.

17          THE COURT:  Okay.

18          Well, first of all, Mr. Mazurek, do you want to be

19  heard on what you think you need that hasn't been given to

20  you?

21          MR. MAZUREK:  Yes.  Mr. Ser is going to handle that

22  argument, Your Honor.

23          THE COURT:  Okay.

24          MR. SER:  Good morning, Your Honor.

25          THE COURT:  Good morning.

1          MR. SER:  The motion seeks two different sets of

2     materials.  The first set that we address in our letter is

3     what we believe are *Brady* materials and, as I specified in the

4     introduction of the letter, there was a production entitled

5     8th Production to the Defense in May of this year.  Within

6     those materials, for the first time, we received New York

7     Police Department-related reports and materials which included

8     a Crime Stoppers Report.  The Crime Stoppers Report and the

9     New York Police Department materials, in bulk, dated back to

10    the day of the alleged murder in 2019 with the Crime Stoppers

11    Report in, I believe, July of 2019, but these materials were

12    several years old and turned over to us in May.

13          After reviewing the materials, we believe that there

14    are outstanding discovery materials -- in particular, *Brady*

15    material -- that we are seeking.  Nothing can perhaps be more

16    *Brady*-esque than admissions or claims by uncharged individuals

17    who take responsibility or admit involvement in criminal

18    activity for which a charge is pending against our clients,

19    and that is what some of this material identified.  In

20    particular, the Crime Stoppers Report identifies or indicates

21    that there was some sort of tip -- we don't know if it was an

22    anonymous tipster or not -- but someone reported having

23    overheard a conversation between two individuals identified as

24    Erick Kim and Davy Navy discussing their involvement in the

25    murder of Xin Gu in Queens.

1              According to the Crime Stoppers Report, there was

2      supposed to be follow-up conducted by NYPD by August of 2019

3      in response to that information.

4              The Crime Stoppers Report doesn't contain any

5      details with regard to what was overheard, which is probably

6      the most important aspect of that Crime Stoppers Report, and

7      if two individuals are discussing and admitting involvement in

8      an ongoing -- a matter that is currently, at least then, in an

9      ongoing investigation state, certainly NYPD would follow up,

10     but there's nothing in the Crime Stoppers Report, no follow-up

11     materials that were produced identifying or discussing what

12     this conversation was that was overheard.

13             And according to the Crime Stoppers Report, this

14     discussion about their involvement was, quote, in detail.  Yet

15     there isn't anything that has been produced to date on that.

16     The Crime Stoppers Report has other detailed information about

17     the background of these two individuals, their criminality,

18     and past criminal activities, along with photographs and other

19     materials that were, you know, identified in the report.

20             The Government kindly provided with us in June in

21     response to a discovery request we had made, which was nearly

22     identical to the discovery request we filed with Your Honor

23     with one or two exceptions, they provided photographs that

24     were referred to and imbedded within the Crime Stoppers

25     Report, but we didn't receive any other materials that we were

*Proceedings*                                                     8

1   seeking; notably, the -- any detailed information about the

2   nature of this conversation that was overheard.

3        So two individuals are claiming involvement or

4   responsibility --

5        THE COURT:  What is said precisely in the Crime

6   Stoppers Report that leads you to believe that the individuals

7   that are being overheard are admitting criminal conduct?  I

8   don't believe you submitted any --

9        MS. LASH:  Your Honor, the Government has a copy for

10  the Court if you would like it now.

11       MR. SER:  That was quoted in here.  I didn't want to

12  submit anything as a public exhibit in full, but I did quote

13  in here -- as I quoted in the letter, Your Honor, Erick Kim

14  and Davy Navy is involved with February 12th shooting at 131st

15  Street and Fowler Avenue of Xin Gu.  Heard him talking about

16  it in detail.

17       Then the remainder of that paragraph, I believe,

18  goes on to discuss their backgrounds and past criminal --

19  alleged criminal activity, which include robberies and

20  murders, as it turns out.

21       THE COURT:  So you know who these people are.

22       MR. SER:  We don't.  We are also seeking their

23  identities.  We only know their names as Erick Kim and Davy

24  Navy.  We think we've identified Erick Kim, at least we know

25  who it is, but Davy Navy, we think, is an AKA or some sort of

*Proceedings*                                                                 9

1   nickname and so we don't have the complete legal name, so we

2   have sought that information from the Government as well along

3   with, as I indicated, the detailed conversation that was

4   overheard if there's any reporting on it.

5          THE COURT:  Did you make a written request to the

6   Government?

7          MR. SER:  We did, Your Honor.

8          THE COURT:  Which is different from the letter that

9   you provided to me.

10         MR. SER:  It's literally nearly identical in terms

11  of the bullet point lists.  When I drafted the motion to Your

12  Honor, I used that letter as a basis.  And, as I said, I think

13  two or three things were responsive that were turned over in

14  the June discovery ninth production by the Government, but the

15  only thing responsive to the Crime Stoppers Report were 20

16  photographs, so that's not in the list to Your Honor.  But

17  everything in the list to Your Honor remains outstanding and

18  falls under one of three categories, according to the

19  Government's response by email, which was either it's not in

20  their possession, it will be produced as part of 3500, or they

21  have no obligation to turn it over.  And they didn't specify

22  which bullet points or items fell within which category, but

23  the email response that they provided indicated that.

24         THE COURT:  What are you seeking in connection with

25  this conversation?  What is it that you want?

*Proceedings*                                                          10

1          MR. SER:  I would default to all of the materials

2     given the clear *Brady*-esque nature of it.  We would like all

3     materials related to this Crime Stoppers Report that were

4     submitted along with any follow-up materials, investigation

5     reports, ED5s, statements by these individuals, any individual

6     or audio recordings of interviews that occurred.  Anything

7     related to this Crime Stoppers Report, I think, is what we're

8     seeking at this point.

9          THE COURT:  So whether there was any follow-up

10    investigation done with respect to the Crime Stoppers Report

11    and what the nature of that follow-up investigation was.

12         MR. SER:  That's part of what we're seeking, but I

13    think --

14         THE COURT:  Make it concrete for me.

15         MR. SER:  Correct.  I list in here identity and

16    contact information for the individuals known as Erick Kim and

17    Davy Navy.  As I said earlier, we want the complete -- so the

18    Crime Stoppers Report seems -- indicates that this individual

19    who reported it overheard this conversation, yet there's no

20    notation in the Crime Stoppers Report or discussion about what

21    the conversation was.  It just says that it was overheard in

22    detail.  So if there's any report, any submission by the

23    reporter, any notes of an interview, anything that would

24    reveal the substance of this conversation that was overheard

25    by the reporter is what we're seeking as well, so if that was

*Proceedings*                                                              11

1   submitted before the follow-up investigation, we would like

2   that.  If it was discovered during the follow-up investigation

3   or anything else along those lines, we want that as well.

4           Before I move on, there's a related component -- in

5   the NYPD reports, there is a very similar notation --

6           THE COURT:  Now these are separate reports that you

7   received?

8           MR. SER:  Correct.  These are Dd5s, I believe --

9           THE COURT:  That you were given.

10          MR. SER:  Right.  In discovery of May of this year.

11          According to one of the Dd5s from, I believe,

12  February 27th or 28th of 2019, a confidential source walks

13  into the 109th Precinct in Queens and reports to NYPD that

14  this individual overheard a conversation where somebody was

15  bragging about making a large sum of money for committing a

16  murder, and the report is redacted so we cannot see the name

17  of the individual who was heard bragging.  The name of the

18  confidential source is redacted, so we don't know who that is.

19          And, again, if someone is now claiming involvement

20  in the murder of Xin Gu and we know it's -- we don't know who

21  that is, we obviously need that information.  That is *Brady* if

22  someone is admitting involvement, and this is being reported

23  by a confidential source, so I'm not sure exactly how 3500

24  would play into a confidential source's reporting as opposed

25  to the words of the actual bragger -- or bragger, and so we do

*Proceedings*                                                      12

1   want that material as well.  We do think it's *Brady*.

2           And while I'm on the -- since I've raised 3500, as I

3   note in my letter, we don't think it would be appropriate to

4   somehow shield production of these materials under the guise

5   or on the premise that it's 3500.  If something is *Brady* and

6   3500, *Brady* should control the production.  And certainly the

7   Court's 5(f) admonition, you know, advised it had to be

8   disclosed reasonably promptly upon discovery.  This is

9   material that dates back to 2019.  It's unclear when it made

10  its way to the U.S. Attorney's Office, but it certainly seems

11  that the longstanding nature of the *Brady* material is

12  something that should have been provided to us somewhat

13  earlier than May of this year, especially given the nature of

14  the evidence here, which are admissions, to involvement in

15  criminal activity.

16          THE COURT:  Do you understand this to be two

17  separate instances?  In other words, the Crime Stoppers Report

18  to be unrelated to the confidential informant walking into the

19  office?

20          MR. SER:  Yes, Your Honor.

21          THE COURT:  Okay.  So there are basically two

22  instances; there's a Crime Stoppers Report, which is --

23          MR. SER:  From July of 2019.

24          THE COURT:  -- July of 2019 and that's presumably

25  somebody calling the police?

*Proceedings*                                                                13

1          MR. SER:  Calling or doing something online via the

2   internet.

3          THE COURT:  Okay.  And then there's the instance

4   where someone actually walks into the precinct and reports

5   what they heard; right?

6          MR. SER:  That is correct.

7          THE COURT:  And that is on what date?

8          MR. SER:  That is late February of 2019.

9          MR. KOUSOUROS:  February 26, 2019.

10          THE COURT:  Okay.

11          MS. LASH:  Your Honor, the Government can address

12   both of these instances.

13          THE COURT:  Okay.

14          MS. LASH:  First of all, Your Honor, you know, I

15   will say that when we received this initial discovery request

16   from the defendants, we immediately looked into the categories

17   of items that they requested and responded within two weeks

18   producing items that, even if we didn't have an obligation to

19   produce, we were -- you know, they were in our file and we

20   were happy to share with the defense.

21          I think what Mr. Ser has left out of his retelling

22   of this is that when we sent our reply saying, this is a

23   supplemental production for you to review, if you have any

24   questions, please give us a call, we're happy to discuss any

25   of these categories in detail.

*Proceedings*                                                          14

1           The first we heard of this letter was yesterday when

2    Mr. Ser called AUSA Park and we promptly called him back in

3    the morning and received no return call, so I can address each

4    of these things on the record today, but we just ask in the

5    future the opportunity for the parties to confer and resolve

6    this before bringing it to the Court's attention.

7           I will start with the Crime Stoppers Report.

8           In May we produced information from an anonymous

9    tipster that was provided on the Crime Stoppers Report website

10   concerning the Gu murder, and I handed up a copy of the entire

11   production to the defense.

12          So the answer to the defense's request is simple; we

13   have produced everything in the NYPD's custody.  This report

14   was created when someone went online to the Crime Stoppers

15   Report website, opted to remain anonymous, and the Crime

16   Stoppers Report website has functionality which blocks IP

17   addresses and other identifying information, and typed the

18   narrative that you can see below here.  And, you know, if the

19   Court reviews this report in full, you will see only the first

20   sentence even mentions the murder, and the only information

21   that's provided is:  Heard him talking about it in detail.

22          Nothing else.

23          The anonymous tipster provided photographs of the

24   individuals.  We've sent those to the defense.  Since this was

25   a report that was made on a website, there are no notes of the

*Proceedings*                                                                  15

1    call, there are no other materials.  This is the entirety of

2    what was submitted.

3           The follow-up -- you will see at the top of the text

4    box where it says "follow up by" and there's a date, that's a

5    date generated by Crime Stoppers to the precinct detectives.

6    We have spoken with the detective and, separately, we have

7    produced the entirety of the NYPD's file into this homicide,

8    and the defense has everything.

9           THE COURT:  Wait a minute.  The entirety of the

10   investigation of this Crime Stoppers Report or the entirety of

11   the NYPD's file regarding their investigation of this case?

12          MS. LASH:  Both, Your Honor.  We've produced the

13   entirety of the NYPD's file.  We have left nothing out.  We

14   redacted certain items, but the defense has everything in our

15   possession and so were there any follow-ups done, any reports

16   made, any notes taken, the defense would have those.

17          THE COURT:  Well, but, again, have you made inquiry

18   specifically as to investigation of this Crime Stoppers

19   Report?  Because --

20          MS. LASH:  We have, Your Honor.

21          THE COURT:  So was there follow-up investigation

22   done of this report by the Crime Stoppers?

23          MS. LASH:  No, Your Honor.

24          THE COURT:  No?

25          MS. LASH:  No.

*Proceedings* 16

1    THE COURT:  They didn't do any follow-up?

2    MS. LASH:  No.  This -- I mean, Your Honor, you

3  know, if -- this tip has no information, little veracity.

4  It's provided by a person who chose to remain anonymous and

5  who sought a reward for providing this information, and we

6  spoke to the case detective and there was no follow-up done.

7    THE COURT:  I wasn't sure looking at it, but has the

8  Government identified who these individuals are?

9    MS. LASH:  Your Honor, the Government has no

10 obligation to identify two innocent people who have been

11 wrongly accused by an anonymous tipster --

12   THE COURT:  How do you know that?

13   MS. LASH:  -- and provide their contact information

14 to the defense.

15   THE COURT:  How do you know that they have nothing

16 to do with it?

17   MS. LASH:  Because, Your Honor, we have overwhelming

18 evidence against the defendants in this case.

19   We understand the defense has investigators.  I hear

20 Mr. Ser say they've identified one person.  All the

21 information as to the identity of this second individual --

22 Davy Navy -- we've provided to the defense.

23   MR. SER:  We were able to identify one of the

24 individuals because only one of the individual's full names is

25 identified in the Crime Stoppers Report -- Erick Kim.  The

*Proceedings*                                                      17

1   other one is not a legal name.  It's even unclear to us --

2               THE COURT:  Are there pictures of the person?

3               MR. SER:  They provided -- yes.  They provided 20

4   photographs that were imbedded within the Crime Stoppers'

5   submissions.  We're working with those, now that we have

6   those, to try to figure a few things out, but that's not going

7   to allow us to obtain any --

8               THE COURT:  Well --

9               MR. SER:  -- investigative material with the bulk of

10  the statements that were overheard.  Obviously, that will help

11  us with identification, but I'm guessing people are not going

12  to want to talk.  We're certainly going to try, but we want

13  the statements if the NYPD has them.

14              THE COURT:  But she said that they don't.

15              MR. SER:  We made the request; they've responded.

16              THE COURT:  Okay.

17              MR. KOUSOUROS:  Your Honor, my question is whether

18  the Government has conducted an investigation aside from the

19  NYPD.  And, you know, I understand Counsel has made a

20  determination that these fellows are innocent of these crimes

21  to which the Court asked "How do you know?" but I think that

22  we would be entitled to their identities to conduct our own

23  investigation.  The NYPD didn't bother to do it.  I'm only

24  asking whether the federal government did any investigation or

25  whether they would provide us with their information so that

*Proceedings*                                                                                      18

1    we can conduct our investigation.

2            MS. LASH:  Your Honor, the basis for identifying

3    these two people is a sentence from an anonymous tipster in

4    2019.

5            THE COURT:  No, just answer the question.  He's

6    asking, did you do an investigation, and do you have the

7    results of that investigation.

8            MS. LASH:  The FBI has identified who we believe

9    these individuals are based on the information in the

10   anonymous tip and the photographs provided.

11           THE COURT:  Can you provide that information to

12   Counsel?

13           MS. LASH:  We can -- we can, Your Honor, but I don't

14   know what our obligation is to do that given --

15           THE COURT:  Well, the FBI has looked into this;

16   correct?

17           MS. LASH:  Yes, Your Honor.

18           THE COURT:  There's an allegation -- I realize it's

19   a tipster or whatever.

20           MS. LASH:  Yes.

21           THE COURT:  There's an allegation -- you know, for

22   whatever reason, it could be true, it could be completely

23   false, whatever, but there is an allegation from someone that

24   these two people were involved.  If the Government has

25   identified who those people are, I'm not saying the Government

*Proceedings*                                                    19

1   has an independent obligation to investigate it, but it seems

2   like if counsel wishes to investigate it, they should be able

3   to do that, so if you can get -- you know, you should give

4   them whatever you have identified with respect to those

5   individuals.

6           MR. SER:  Your Honor, obviously if the FBI has done

7   investigation and there's any reports or materials generated,

8   we would request that as well under the same premise that it's

9   *Brady*.

10          THE COURT:  Well, if they decided -- I don't know

11  what the reports say.  It could be or it couldn't be.  But can

12  you provide that information to defense?

13          MS. LASH:  Your Honor, first of all, you know, we

14  have no certainty that the people who we believe are Erick Kim

15  and Davy Navy are the people identified in this tip.  We can

16  provide information on an attorney's-eyes-only basis to the

17  attorneys who we suspect these individuals are and -- yes.

18          THE COURT:  All right.

19          MR. SER:  And the reports.

20          THE COURT:  Are there reports from the FBI?

21          MS. LASH:  I'm not aware of any FBI reports, but we

22  will look through our files.  We -- there is certainly no

23  *Brady* information, which we understand our obligation to turn

24  over.  I'm not sure if there are independent reports, but if

25  there are, we will review them and we will discuss, amongst

*Proceedings*                                                           20

1    ourselves, and with defense counsel.

2          THE COURT:  You will do what?

3          MS. LASH:  We'll discuss either the further basis

4    for our decision not to disclose these reports or we will

5    release them with the identifying information that we have.

6          MR. SER:  And any other information about the

7    investigation, obviously, not just their identities.

8          MR. KOUSOUROS:  This is potentially *Brady*

9    information.  I appreciate the Government investigated it, but

10   on its face with 20 photographs, it's *Brady* material.  I

11   understand the Government has investigated it, as is their

12   obligation, but I respectfully submit that they can't make

13   their own determination that these fellows are innocent --

14         THE COURT:  All right.  This is my ruling:  Either

15   you turn the material over to defense counsel or you write a

16   letter to the Court attaching the material and explaining why

17   you have no obligation to turn the material over.  But I think

18   there is an allegation that these two people are involved.  If

19   they're identified, if the Government has identified them,

20   that information should be provided to defendants, and I don't

21   understand why you think you wouldn't have to provide that.

22         So I'm directing you to provide it.  I recognize

23   that this letter was just received from the Court yesterday.

24   If you believe that you have some basis not to turn it over,

25   that you haven't had the opportunity to fully respond to,

*Proceedings*                                                    21

1   fine, but by the end of the day tomorrow, either provide it or

2   provide the Court with a letter because this is information,

3   we need to get this taken care of.

4           MS LASH:  We understand, Your Honor.

5           MR. SER:  Is Your Honor's ruling the same with

6   regard to the second set of *Brady* material with regard to the

7   confidential source who walked into the 109th Precinct?

8   Because that's very similar.

9           MS. LASH:  Your Honor, can I address that?

10          THE COURT:  She hasn't had the opportunity to

11  address that yet.

12          MR. SER:  Okay.

13          MS. LASH:  So, Your Honor, the second category of

14  information the defense has cited in the report were a

15  confidential reported that an unknown man claimed

16  responsibility for Gu's murder.

17          As to the confidential informant, we will send to

18  the defense attorneys the name of the confidential informant's

19  lawyer and they can inquire of the lawyer, you know, should

20  this informant wish to speak to them and be interviewed.

21          We have -- and we will disclose any additional

22  statements of the confidential informant that we have in our

23  file.

24          As to the unknown male who claims responsibility for

25  the murder, that individual will testify.  The defense is

*Proceedings*                                                                    22

1  going to receive his name, every statement that he has made in

2  connection with this case under the timelines set by the

3  Court, and the defense will have the opportunity to use this

4  information at trial to cross-examine him in open court.

5           We have reviewed his statements and -- for *Brady*

6  materials -- and we have not produced anything because his

7  statements are inculpatory as to the defendants.  We will

8  continue to review this person's statements and we will

9  produce any materials that we determine to be *Brady* if we

10 receive them.

11          THE COURT:  Let me back up and follow this scenario.

12 A confidential informant walks into the police and says he

13 overheard a conversation about money and the murder of Gu; is

14 that correct?

15          MS. LASH:  Yes.

16          THE COURT:  All right.  And you have identified the

17 person that he was talking about.

18          MS. LASH:  Yes.

19          THE COURT:  In this Dd5, does he mention the

20 person's name?

21          MS. LASH:  He refers to him by an alias.

22          THE COURT:  Okay.  And that person is someone that

23 you say will admit what's in the Dd5, that they had money

24 somehow in connection with the murder of Gu?

25          MS. LASH:  That individual is a Government witness,

*Proceedings*                                                                                23

1    it is a cooperating witness, and he will testify at trial.

2         MR. SER:  Your Honor, I'm not sure there was an

3    answer to Your Honor's request about whether he's going to

4    testify consistent with the Dd5.  Curious if there's an answer

5    to that.

6         THE COURT:  Is it going to be similar to what is

7    said in the Dd5?

8         MS. LASH:  It's consistent with the Dd5.  I -- he

9    will admit his involvement, his participation.  He will not

10   say, for example, that he received money in exchange for this

11   murder, but he will testify as to his involvement.

12        THE COURT:  Okay.

13        MR. SER:  Your Honor, at a minimum -- well, I

14   shouldn't qualify anything.  The Government didn't identify

15   whether it was going to turn over the name of -- we think we

16   need the name of the confidential source, not the lawyer.

17   That doesn't help us contact and reach out necessarily, so we

18   are going to ask that the Government identify who this

19   individual is who made this report, not just the lawyer.

20        MS. LASH:  Your Honor, we understand that the

21   confidential informant is represented by an attorney and --

22        THE COURT:  That's fine.  And they should contact

23   his attorney, but -- and I would direct that they contact his

24   attorney first.  But what are they going to do, call an

25   attorney and say, how many clients do you have?  I mean, you

*Proceedings*                                                        24

1    know, it seems like, to me, you have to tell them the name of

2    the person.  I will direct counsel not to contact the person

3    directly, but, you know, to contact his counsel.

4              MS. LASH:  Your Honor, I have been in communication

5    with the confidential informant's counsel.  I will let him

6    know that these people will be calling him about this specific

7    client so there's no risk --

8              THE COURT:  What is the point?  I don't understand.

9    What is the point?  If they are going to call him about the

10   client, what is the issue here that you are concerned about?

11             MS. LASH:  The issue is, Your Honor, that this

12   individual has never been publicly identified as a

13   confidential informant.  The fact that he has previously

14   cooperated with police is a safety risk for this person,

15   particularly where he is located right now.  And, Your Honor,

16   we believe -- this is a murder-for-hire case where violence

17   has occurred and we take our witness safety very seriously.

18             THE COURT:  Well, he's not your witness, though.  Is

19   this someone who is going to testify in the Government's case?

20             MS. LASH:  At this point, we don't expect him to,

21   no.  The information that he has is hearsay and it is not

22   admissible.  We will be calling the person who made the

23   statements.

24             THE COURT:  Why is it hearsay actually?  If someone

25   is admitting their involvement in a crime, is that hearsay?  I

*Proceedings*                                                    25

1   don't think so.

2        MS. LASH:  I mean, Your Honor, the defense can move

3   to -- if they would like to call him as a witness.  We thought

4   in the first instance it would be -- it would simplify

5   matters.  If they contacted this person's attorney, it would

6   protect his safety, and we thought we would start there.

7   That's what I would have proposed to defense counsel had we

8   discussed this in advance of conference.

9        MS. KELLMAN:  Judge, do we come back to you when the

10  lawyer says "I can't discuss this with you"?  Because I can't

11  imagine any lawyer wouldn't say that, so...

12       And how it's hearsay is beyond me.

13       THE COURT:  Well, the possibility exists that you

14  may want to arguably subpoena this witness to come to court

15  and then his lawyer can take whatever position that they want

16  to take.

17       MR. MAZUREK:  Judge, if I can just for a second.

18  Henry Mazurek on behalf of Zhe Zhang.

19       I'm struggling with what the Government is actually

20  saying here.  If they have statements that were made by this

21  confidential source that directly involve the murder of the

22  victim in this case and they are not producing it to us, how

23  can that possibly not be *Brady*?  I will make a representation

24  in this Court that it is material to the preparation of our

25  defense because our client has a public safety risk, too, of

*Proceedings*                                                                26

1   going to prison for the rest of his life and he wasn't there

2   on February 12th and we believe other people were.  And this

3   individual, the confidential source, has information about who

4   was there and we want to have the information that the

5   Government has.  How can that not possibly be *Brady*?  I am

6   very much struggling with that considering that I am

7   representing a client who is facing life in prison.

8              THE COURT:  Was this person interviewed further?  Is

9   there anything other --

10             MS. LASH:  Yes, Your Honor.  So we've turned over

11  the full statement that the confidential informant made at the

12  109th Precinct, but what we intend to do today is turn over

13  additional interviews with the confidential informant.  They

14  are -- the statements are the same that he made at the

15  109th Precinct.  There is no -- I would represent there's no

16  difference in them --

17             THE COURT:  Well, on what basis, to the extent that

18  this person has information directly related to the crime,

19  because he presumably overheard someone admitting their

20  involvement in the crime --

21             MR. SER:  Or it was said directly to this individual

22  who reported it.

23             THE COURT:  What law do you have that suggests that

24  you can shield the identification of this person?  And, you

25  know, what help is it?  I mean, if you're going as far as

*Proceedings*                                                27

1   saying that you understand they should be able to call him as

2   a witness because you're giving him his attorney's name, it

3   seems like you are conceding that they should be able to talk

4   to him, so I don't know how you put that together without --

5   and not give his identity.

6            MR. SER:  Your Honor, just so it's clear, the

7   Government said they turned over the entire report of that

8   statement.  I quoted in my letter the extent of what was in

9   that Dd5 and it was two sentences with mostly redactions, so

10  we don't have anything beyond what I've identified in my

11  letter.  So just so there's no confusion, we don't have any

12  substance beyond --

13           THE COURT:  All right.  Once again, I'm going to do

14  this.  I'm going to direct the Government -- and you said you

15  would -- to provide the further papers.

16           I'm going to direct the Government to provide

17  Counsel with the identity of this individual on the

18  understanding that they will only contact this individual

19  through counsel; that they will talk to his counsel.

20           MS. LASH:  We will do that, Your Honor.

21           THE COURT:  Okay.

22           And if the lawyers have any further application

23  after that --

24           MR. MAZUREK:  What about the reports of statements

25  that --

*Proceedings*                                                    28

1          THE COURT:  They said they were going to turn those

2     over.

3          MR. MAZUREK:  Okay.  I must have missed that along

4     with the premises search warrant.

5          THE COURT:  You need to sit closer up.

6          MR. MAZUREK:  I'm too far away.

7          THE COURT:  Okay.  Is there anything else that we

8     need to resolve?

9          MS. LASH:  Well, Your Honor, there's about 11

10    additional items that the defense requests in their letter.

11    We are happy to confer with the defense counsel after this

12    conference about those materials specifically, or we can

13    respond orally on the record now.

14         THE COURT:  Why don't you confer with counsel,

15    because it's not a really productive use of my time to have

16    you talk back and forth and we go, okay, we'll do that.  And I

17    understand that's because you haven't had the ability to have

18    the -- I'm not being critical.  I'm just saying that I think

19    it's better to follow that process first, and if there are any

20    things that you can't work out, to bring that to my attention.

21         MS. LASH:  Yes, Your Honor.

22         THE COURT:  Actually, if you want to have those

23    discussions over the luncheon recess -- Tiffany, can I call

24    this case at 2:00?

25         THE COURTROOM DEPUTY:  Yes, we can.

*Proceedings*                                                          29

1        MR. KOUSOUROS:  Your Honor, I have a plea before

2   Judge Chen at 2:00.

3        THE COURT:  Oh.

4        MR. KOUSOUROS:  So I will be here all day and I'm

5   happy to confer --

6        MS. LASH:  Your Honor, I don't think that there's

7   going to be anything controversial in the last 11 items.  I

8   could be wrong, but we are happy to have the discussion, and

9   if the defense has any follow-up, they can apply to you.

10       In short, everything that they've requested we have

11  turned over in full.  No such thing exists, and I will --

12       THE COURT:  Well, go through line item by line item

13  with them and tell them that.

14       MS. LASH:  We will, Your Honor.

15       THE COURT:  Let me just put it this way.  If there's

16  anything -- contact chambers.  If there's anything further

17  that I need to resolve that you can't resolve among

18  yourselves, then I will put it on at three o'clock, okay?

19       MS. LASH:  Yes, Your Honor.

20       THE COURT:  Because I want to move this along, and I

21  know it's important for people to have these things resolved

22  before our September 11th trial date.

23       MR. KOUSOUROS:  Judge, I do have one issue that I

24  think is going to come up and we did confer earlier today.

25       I understand the Court has deemed the schedule for

*Proceedings*                                                           30

1   the turning over of the sensitive material to be reasonable,

2   September 1st.  I would only ask, you know, what the volume of

3   materials are.

4            And another issue has come up, and that is -- and we

5   did talk about it, but we need some clarity because we may

6   need you to amend that because there are prison calls that are

7   going to be turned over.  And prison calls, if they're 3500

8   material, because my understanding is that some of the prison

9   calls will be from one of the cooperating witnesses, they may

10  be, some of them, in Korean -- although Counsel doesn't think

11  so -- but, Judge, they take a long time to review.  There

12  could be -- even if there's a hundred of them, I mean, I have

13  received prison calls from Rikers Island.  It's not like the

14  MDC.  These guys are on the phone constantly and that's a real

15  issue for us, especially --

16           THE COURT:  Are you talking about prison calls by a

17  cooperating witness or prison calls by your clients?

18           MR. KOUSOUROS:  No.  Prison calls from a cooperating

19  witness -- one or many -- and my understanding can be wrong if

20  I have the names -- if I have in my head right the

21  identities -- at least two of them were in Rikers Island for a

22  good period of time, so many calls, and reviewing them on

23  September 1st along with the more important, you know, 3500

24  material --

25           THE COURT:  So you are asking for an earlier

*Proceedings*                                                                      31

1    production of the calls?

2             MR. KOUSOUROS:  Absolutely.

3             THE COURT:  Do you know how many calls there are?

4             MS. LASH:  We don't, Your Honor.  This was brought

5    up right before the conference.  We would like the opportunity

6    to figure out what the volume is, and we understand defense

7    counsel's request and if there are a large volume of calls, I

8    suspect we can work this out.

9             MR. KOUSOUROS:  Judge, I would just respectfully ask

10   you, we can come back after we confer, and it can be

11   attorneys' ears only, but just back that up two weeks just for

12   the calls.  Even if there are 50, they go on for five minutes,

13   ten minutes, they stay on the phone forever, and if this is a

14   cooperating witness --

15            THE COURT:  To avoid having to do this, can you turn

16   the calls over earlier?  I mean, what's the point of shielding

17   those?  They know who the witness is; correct?  And calls are

18   a little bit different.  So you just don't have to discuss

19   this before three o'clock, can we just resolve this now that

20   you produce the calls at an earlier schedule?

21            MS. LASH:  Yes, Your Honor.

22            THE COURT:  Okay.

23            MR. KOUSOUROS:  Thank you, Judge.

24            THE COURT:  All right.

25            If it's necessary for the parties to see the Court

*Proceedings*                                                                32

1    at 3:00, you will let my courtroom deputy know.

2           Is there anything else that we --

3           MR. MAZUREK:  I have one additional issue, Your

4    Honor.  I thank you Your Honor for --

5           THE COURT:  You don't need to stand.

6           MR. MAZUREK:  -- decision on the suppression

7    motions.  Obviously you said an opinion will follow.  There

8    may be some issues with respect to, or litigation relating to

9    the fruits of those searches making sure that there's nothing

10   else that we would seek to suppress as a result of --

11          THE COURT:  Are you talking about the narcotics

12   search?  That's the only one I suppressed.

13          MR. MAZUREK:  Yes.  I guess --

14          THE COURT:  The Government can't introduce into

15   this -- I mean, I don't know how they could anyway because it

16   doesn't seem relevant.

17          MR. MAZUREK:  Well, that was my follow up.  There

18   are 404(b) motion schedules that we have on the calendar with

19   initial --

20          THE COURT:  Well, they're not going to be permitted

21   to introduce any narcotics seized from the home.  It was

22   marijuana, I believe; correct?

23          MR. MAZUREK:  Yes.

24          MS. LASH:  Yes, Your Honor.

25          MR. MAZUREK:  I understand that.  My concern is that

*Proceedings*                                                                33

1    in previous conferences the Government has indicated that they

2    may seek to introduce narcotics-related businesses they allege

3    my client to be a part of as relationship-type evidence with

4    the other defendants, or potentially as 404(b), since we don't

5    know yet whether they intend to do that.  That is a very

6    significant piece here, because if Your Honor is admitting

7    that type of evidence, not from the home as a result of the

8    search warrant, but from testimony or other evidence the

9    Government has acquired during the course of the

10   investigation, we do need time.  That would be a big strategic

11   difference in how the trial is presented from our perspective

12   to know whether that's going to be a part of this

13   murder-for-hire trial.

14           THE COURT:  Well, that's a 404(b) issue.

15           MR. MAZUREK:  I suppose so.  I guess what I'm

16   asking, we're going to have 404(b) motions fully briefed by

17   August 11th, so maybe we can have argument soon thereafter --

18           THE COURT:  Yes.  I'm going to set down another

19   status conference.

20           MR. MAZUREK:  Okay.

21           THE COURT:  I just have to figure out when to do

22   that.

23           MR. MAZUREK:  I would beg the Court to have it soon

24   so that we can prepare our trial because that would change

25   witnesses --

*Proceedings*                                                              34

1          THE COURT:  Okay.

2          MR. MAZUREK:  -- and evidence that we may seek to

3    introduce in our case.

4          THE COURT:  Set it down to argue that on

5    August 18th.  We'll have another status conference.

6          THE COURTROOM DEPUTY:  Judge, let me just confirm

7    the time.

8          THE COURT:  August 18th.

9          THE COURTROOM DEPUTY:  At 10:00 a.m.?

10         THE COURT:  Yes.

11         MR. MAZUREK:  Great.  Thank you, Your Honor.

12         MR. KOUSOUROS:  Judge, just a trial question.  Do

13   you sit on Fridays?  Are we going to go five days?

14         THE COURT:  You will assume we will.  If my calendar

15   gets -- if this is dragging on or I have to take care of other

16   things, it's a possibility that I may have to take something

17   in the afternoon or something, but now I think it's important

18   just to get through the case.

19         MR. KOUSOUROS:  Okay.

20         MR. MAZUREK:  And I presume we will be taking off

21   the Jewish holidays in September.

22         THE COURT:  Well, it depends on which ones.  There

23   are so many.  Which ones do the parties observe?

24         MR. MAZUREK:  I think it's more the attorneys.

25         THE COURT:  I'm sorry, I meant the attorneys.  I was

*Proceedings*                                                     35

1  referring to --

2          MR. MAZUREK:  We can discuss that.  I think that

3  first week is Rosh Hashanah on the 15th.

4          THE COURT:  Are they on Fridays?  Tell me now the

5  days that are important to Counsel that they would observe if

6  we weren't on trial.

7          MR. MAZUREK:  September 15th is Rosh Hashanah --

8          THE COURT:  Okay.

9          MR. MAZUREK:  -- which is a Friday.  And then Yom

10 Kippur is the 25th, which is a Monday.

11         THE COURT:  September 25th?

12         MR. MAZUREK:  Yes.

13         THE COURT:  Okay.  So those are the two days you

14 would need to take off?

15         MR. MAZUREK:  I defer to my colleagues in terms of

16 their observance.

17         MS. KELLMAN:  Yes, Your Honor.

18         MR. MAZUREK:  Yes.

19         THE COURT:  Who is observant?

20         MR. MAZUREK:  I'm not.  I'm not even Jewish.

21         THE COURT:  Oh, well, this doesn't count.

22         Ms. Kellman, you are?

23         MS. KELLMAN:  Yes, Your Honor.

24         MR. SER:  And the other side of the table.

25         THE COURT:  Okay.  And the other side of the table.

*Proceedings*                                                                  36

1          MR. LIPTON:  Can I ask one other procedural

2    question, Your Honor?

3          THE COURT:  Yes.

4          MR. LIPTON:  Regarding the Court's procedures for

5    issuance of pretrial subpoenas, does the Court accept

6    application for pretrial subpoenas ex parte?

7          THE COURT:  Yes.

8          MR. LIPTON:  Okay.  I will go ahead and do that.

9          THE COURT:  Okay.  Thank you.

10         Anything else?

11         MS. LASH:  No, Your Honor.  Thank you.

12         THE COURT:  All right.  Thank you.

13         (Matter concluded.)

14

15                    *     *     *     *     *

16

17   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
18

19     /s/ Denise Parisi                    July 14, 2023

20   _____    _____
         DENISE PARISI                          DATE

21

22

23

24

25