UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v.-

ANTONY ABREU,

        Defendant.

22 Cr. 208 (CBA)

# MEMORANDUM OF LAW IN SUPPORT OF ANTONY ABREU'S MOTIONS PURSUANT TO RULE 29 AND RULE 33

Susan G. Kellman
Eylan Schulman

Submitted: May 31, 2024

*Counsel for Antony Abreu*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii
PRELIMINARY STATEMENT ........................................................................................... 1
SUMMARY OF ARGUMENT .............................................................................................. 1
DISCUSSION ........................................................................................................................ 4
    I.   There Was No Evidence of an Agreement with Antony Abreu to Commit the Charged Murder-for-Hire, an Element in Both Counts, Prior to Chris Gu's Murder ............................... 4
        A.   Legal Standard ............................................................................................................ 4
            i.   The Law of Conspiracy ........................................................................................... 6
            ii.   Substantive Murder-for-Hire Charge ..................................................................... 7
        B.   Evidence of Pre-murder Agreements to Kill Chris Gu ................................................ 9
            i.   The promise from Allen Yu to You You and Zhe Zhang was impermissibly vague . 9
            ii.   There was no evidence of a pre-murder agreement involving Antony Abreu .......... 11
    II.   The Court Should Grant Mr. Abreu a New Trial ................................................................ 13
    III.   Mr. Abreu Joins in Defendants Yu and Zhang's Post-Trial Motions ............................... 15
CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Carpenters & Joiners v. United States*, 330 U.S. 395 (1899)..................................................................5
*Jackson v. Virginia*, 443 U.S. 307 (1979).........................................................................................4
*United States v. Amato,* 15 F.3d 230 (2d Cir. 1994) ...........................................................................6
*United States v. Babilonia*, 854 F.3d 163 (2d Cir. 2017).....................................................................8
*United States v. Blasini-Lluberas*, 169 F.3d 57 (1st Cir. 1999) ..........................................................5
*United States v. Blondet*, No. S13 16-CR-387 (JMF), 2022 WL 17370032 (S.D.N.Y. Dec. 2, 2022)...................................................................................................................................5
*United States v. Clemente*, 2004 U.S. Dist. LEXIS 627 (S.D.N.Y. 2004)....................................14
*United States v. Coplan*, 703 F.3d 46 (2d Cir. 2012)..........................................................................6
*United States v. D'Amato*, 39 F.3d 1249 (2d Cir. 1994) ....................................................................6
*United States v. Davis*, 103 F. Supp. 3d 396 (S.D.N.Y. 2015) ........................................... 9, 12, 13
*United States v. Ferguson*, 246 F.3d 129 (2d Cir. 2001) ................................................................14
*United States v. Frampton*, 382 F.3d 213 (2d Cir. 2004) ................................................... 9, 10, 13
*United States v. Friedman*, 300 F.3d 111 (2d Cir. 2002)..................................................................6
*United States v. Glenn*, 312 F.3d 58 (2d Cir. 2002)..........................................................................6
*United States v. Hardwick*, 523 F.3d 94 (2d Cir. 2008) ...................................................................8
*United States v. Heras*, 609 F.3d 101 (2d Cir.2010)........................................................................1
*United States v. Jones*, 30 F.3d 276 (2d Cir. 1994) ..........................................................................7
*United States v. Litwok*, 678 F.3d 208 (2d Cir. 2012) ......................................................................1
*United States v. Lorenzo*, 534 F.3d 153 (2d Cir. 2008) ...................................................................5
*United States v. Martinez-Sandoval*, 2003 U.S. Dist. LEXIS 3045 (S.D.N.Y. Mar. 5, 2003) ........7
*United States v. Nusraty,* 867 F.2d 759 (2d Cir. 1989).....................................................................7
*United States v. Pauling*, 924 F.3d 649 (2d Cir. 2019) ..................................................................12
*United States v. Rodriguez,* 392 F.3d 539 (2d Cir. 2004) ................................................................7
*United States v. Rubin*, 844 F.2d 979 (2d Cir. 1988) .......................................................................6
*United States v. Samaria*, 239 F.3d 228 (2d Cir. 2001)............................................................. 6, 7
*United States v. Taylor*, 464 F.2d 240 (2d Cir. 1972)......................................................................5
*United States v. Vernace*, 811 F.3d 609 (2d Cir. 2016) ................................................................12
*United States v. Weiner*, 152 F. App'x 38 (2d Cir. 2005)................................................................6
*United States v. Wexler*, 838 F.2d 88 (3d Cir. 1988) .......................................................................7
*United States v. Wicklund*, 114 F.3d 151 (10th Cir. 1997) .............................................................8

## Statutes

18 U.S.C. § 1958................................................................................................................... 8, 9, 11
Fed. R. Crim. P. 29(a) .......................................................................................................................5
Fed. R. Crim. P. 33 .........................................................................................................................13

## PRELIMINARY STATEMENT

Antony Abreu moves for a judgment of acquittal as to the two counts of conviction – Count I murder-for-hire conspiracy and Count II murder-for-hire – because the trial record is devoid of any evidence that Antony Abreu entered into an agreement that would benefit him financially, *before* Chris Gu was murdered on February 12, 2019 – as required. At trial, the government asked the jury to substitute rank speculation, or worse, conjecture, for actual evidence – from which a conclusion might reasonably and legitimately have been drawn. Arguing, without any evidentiary support, that because Zhe Zhang gave Antony Abreu what might have been a valuable watch – in the year *after* Chris Gu was killed – this was sufficient for the jury to infer that Mr. Abreu entered into a pre-murder agreement to commit the crime. The conclusion that the government urged the jury to adopt has no factual basis in the record because the government presented no evidence that Mr. Abreu contracted to commit the murder for pecuniary gain – prior to the murder – which the statute requires for each of the counts of conviction.

## SUMMARY OF ARGUMENT[1]

Because the trial record is completely devoid of any evidence to support the existence of a pre-murder financial agreement involving Mr. Abreu, the government encouraged the jury to speculate. Specifically, the government suggested that the jury could infer that Mr. Abreu would not have committed the murder for free, notwithstanding the nonexistence of any evidence to support such an inference. Tr. 2215.

According to the government, Mr. Abreu was supposedly paid for the murder as follows:

---

[1] Except where otherwise noted, the following facts are derived from the trial transcript. Page citations to the trial transcript are preceded by "Tr." For any disputable fact, the resolution is made "in the light most favorable to the prosecution." *United States v. Litwok*, 678 F.3d 208, 213 (2d Cir. 2012) (internal quotation marks omitted) (quoting *United States v. Heras*, 609 F.3d 101, 105 (2d Cir.2010)).

1

"You You [gave] the money to Zhang and Zhang gave it to Abreu." Tr. 2215. The government went on, arguing: "Zhang never got Amaco's business and Allen Yu only paid [Zhang] five figures in cash. So Zhang did the next best thing. He gave [Mr. Abreu] one of his ultra-luxury, highly-exclusive Richard Milles making good on his promise to pay the Defendant for pulling the trigger." Tr. 2218-19. This argument was misleading and inaccurate for multiple reasons – and the government knew it. First, the record is completely devoid of even a suggestion that Zhang made a pre-murder "promise to pay" Abreu. Since there was not a scintilla of evidence on this point – assuming *arguendo* that Mr. Abreu committed the murder, he could have done it as a favor for Zhang or for no pecuniary benefit at all. We just don't know – and the jury was forced to speculate – because the government provided no evidence from which they could reasonably reach such a conclusion.

Second, while the evidence demonstrated that Allen Yu paid You You – who claims that he did not commit the murder – upwards of $200,000 in 2018 and 2019, Zhang received a total of $30,000 in checks. Worse for the government's ultimate argument is the fact that the evidence showed that the $30,000 had nothing to do with reimbursement for the murder; rather, it was undisputed that it was reimbursement for an outstanding marijuana debt between You You and Zhang. You You admitted the $30,000 in checks that Zhang received from Allen Yu had nothing to do with payment for the murder – and had everything to do with paying Zhang back a $50,000 marijuana debt. Tr. 702. Specifically, You You made it clear that his biggest concern was that Zhang was not going to give him any more marijuana until he brought his marijuana debt down. Tr. 690. Conveniently for Mr. Abreu, You You's testimony contradicts the argument advanced by the government in its closing arguments.

Indeed, there was no evidence Zhang was ever paid for his role in the murder – at most,

2

there was the amorphous promise by Allen Yu to share business leads and help Zhang and You You start their own construction business. This testimony – real, imagined or hypothesized – never implicated Antony Abreu.

The government suggested that Mr. Abreu asked the jury "to believe that Zhang told Abreu, his employee, to murder a stranger out in the open, in full view of surveillance cameras, just because. That makes no sense." Tr. 2215. But the defense's position is not that Mr. Abreu committed the murder for free – we contend there is no evidence of a pre-murder promise – as the law requires. The government argued the following: "Zhang promised Abreu $100,000. Abreu wrote it himself: Dude owed me a hundred K so he gave me the watch as payment. Abreu agreed to kill Chris Gu in exchange for money. This was a job and he didn't do it for free." Tr. 2216, citing GX 1317. The government argument relied on an Instagram conversation which occurred more than 2½ years *after* Gu was murdered, in which Mr. Abreu remarks that he got paid with a watch for "work" owed and needed to fix it first and acknowledges the watch might be a counterfeit, stating "I don't know if the Richard might be fake LOL." GX 1317. Critically, there is no evidence connecting that payment to Gu's murder. As the evidence showed, Zhang and Abreu were regularly involved together in large scale marijuana distribution and the "Richard" which was discussed years after Gu's murder is far more plausibly a payment in connection with their thriving marijuana business. For the jury to find that the watch was the result of a pre-murder agreement to kill Chris Gu, the government asked the jury to rely on conjecture, which was unsupported by any facts in the record. In the final analysis, there is no evidence to suggest what the watch given to Mr. Abreu was meant to represent.

No reasonable juror could conclude that the fact that Zhang gave Mr. Abreu a watch during the year after the murder demonstrates the watch was payment for the murder  – particularly when

3

the facts in the record made clear that Zhang and Mr. Abreu were involved in a high-end and ongoing marijuana distribution business – and no evidence supported the government's hypothesis.

In lieu of *any* actual evidence, the government asked the jury to speculate: "Think about it, members of the jury. It's not plausible to think that the defendant went ahead and bought the get-away car, got the fake license plate, got the gloves, got the gun if he did not think that he was going to get compensated for it. He would not have thought all those things and actually pulled the trigger if he thought he wasn't going to get paid for it." Tr. 2118. There is no time like the present for this Court to remind the government that conjecture is not a substitute for evidence.

It is undisputed that the trial testimony does not demonstrate that Mr. Abreu had any involvement in the planning or agreement to commit the murder. You You was asked "Prior to February 11, 2019, you never spoke to Antony Abreu about this murder, correct?" "Correct," You You responded. Tr. 612. You You acknowledged never speaking to Mr. Abreu alone – they never even had a substantive conversation. Tr. 637. You You, who was recompensed richly for his role in the murder, never agreed to pay Mr. Abreu anything for the murder – not even $1. Tr. 666-67. Unlike You You's co-conspirator, David Yu, the evidence was unequivocal that Mr. Abreu "never came to see" You You – or anyone else – requesting compensation for his alleged involvement in the murder. Tr. 707-08.

## DISCUSSION

### I. There Was No Evidence of an Agreement with Antony Abreu to Commit the Charged Murder-for-Hire, an Element in Both Counts, Prior to Chris Gu's Murder

A. <u>Legal Standard</u>

"[I]n our system . . . the application of the beyond-a-reasonable-doubt standard to the evidence is not irretrievably committed to jury discretion." *Jackson v. Virginia*, 443 U.S. 307, 318

4

n.10 (1979). The Constitution prohibits a jury from convicting a defendant if no reasonable jury could have found each element proven beyond a reasonable doubt. *Id.*, at 319. Although the jury is "permitted to enter an . . . unreasonable verdict of 'not guilty,'" it does not have the "power to enter an unreasonable verdict of guilty." *Id.* (citing *Carpenters & Joiners v. United States*, 330 U.S. 395, 408 (1899)). Thus, "Rule 29(a) of the Federal Rules of Criminal Procedure requires the court to 'enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.'" *United States v. Blondet*, No. S13 16-CR-387 (JMF), 2022 WL 17370032, at *5 (S.D.N.Y. Dec. 2, 2022) (quoting Fed. R. Crim. P. 29(a)).

Although it is generally left to the jury to determine the credibility of witnesses, weigh the evidence and draw justifiable inferences from proven facts, *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir. 1972), "juries do not have carte blanche," *United States v. Blasini-Lluberas*, 169 F.3d 57, 62 (1st Cir. 1999), and "[t]he jury may not be permitted to conjecture merely, or to conclude upon pure speculation or from passion, prejudice or sympathy." *Taylor*, 464 F.2d at 243.

On a Rule 29 motion, the Court is required to "take a hard look at the record and to reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." *Blasini-Lluberas*, 169 F.3d at 62 (internal citations and quotation marks omitted); *see also United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (internal citation, quotation marks and alterations omitted) ("[S]pecious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is probably guilty").

"If the evidence is such that reasonable jur[ors] must necessarily have . . . a [reasonable] doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration." *Taylor*, 464 F.2d at 243. Moreover, if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable

5

jury must necessarily entertain a reasonable doubt." *United States v. Coplan*, 703 F.3d 46, 69 (2d Cir. 2012). In other words, where the evidence is "in equipoise," a judgment of acquittal is required. *Id.*; *see also United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002); *United States v. D'Amato*, 39 F.3d 1249 (2d Cir. 1994).

### i. The Law of Conspiracy

As the Second Circuit has instructed, "the fundamental element of a conspiracy is unlawful agreement." *United States v. Rubin*, 844 F.2d 979, 983 (2d Cir. 1988). To establish the existence of a conspiracy, the government is required to prove the existence of a "meeting of the minds" among the purported conspirators, as to at least the general nature of the plan, if not every detail of its execution. *United States v. Weiner*, 152 F. App'x 38, 40 (2d Cir. 2005). The government need not present evidence of a formal or express agreement, but it must, at a minimum, prove that the conspirators shared "a tacit understanding to engage in the offense." *See United States v. Amato,* 15 F.3d 230, 235 (2d Cir. 1994).

Even when a defendant has associated himself with persons proven to be conspirators, and even if he has demonstrated through conduct his suspicion that criminal activity of some kind is afoot, the government must prove that the defendant knew the specific unlawful aim of the conspiracy, and that he acted intentionally to achieve that unlawful objective. *United States v. Samaria*, 239 F.3d 228, 233-34 (2d Cir. 2001); *United States v. Friedman*, 300 F.3d 111, 124 (2d Cir. 2002) ("[p]roof that the defendant knew that *some* crime would be committed is not enough") (emphasis in original).

As the Second Circuit held in *Samaria*, permitting a guilty verdict without proof of a defendant's knowledge of the conspiracy's illegal objective, and his specific intent to join the conspiracy in furtherance of that objective, "would be to permit suspicious circumstances or

6

association with criminals to suffice as proof of conspiracy." *Samaria,* at 240. *See also United States v. Wexler*, 838 F.2d 88, 91-92 (3d Cir. 1988). The *Samaria* Court reaffirmed the principle that "mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the conspiracy, *even if the defendant has knowledge of the conspiracy*." *Samaria,* at 235, *citing United States v. Jones*, 30 F.3d 276, 282 (2d Cir. 1994) (emphasis added) (other citations omitted).

There must "be some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Nusraty,* 867 F.2d 759, 763 (2d Cir. 1989) (citations and internal quotation marks omitted); *United States v. Rodriguez,* 392 F.3d 539, 545 (2d Cir. 2004); *United States v. Samaria*, 239 F.3d at 233-34. Despite the fact that membership in a conspiracy can be proven through circumstantial evidence, the evidence is nevertheless insufficient to sustain a conviction when "the circumstantial evidence regarding Defendant's specific intent to join the conspiracy equally supports competing theories of guilt and innocence." *United States v. Martinez-Sandoval*, 2003 U.S. Dist. LEXIS 3045, at *21 (S.D.N.Y. Mar. 5, 2003).

### ii. *Substantive Murder-for-Hire Charge*

In order to prove the substantive murder-for-hire charge, the government had to prove beyond a reasonable doubt each of the following four elements of the crime:

> First, that the defendant either used or caused to be use a facility of interstate commerce.
>
> Second, that this use of the facility of interstate commerce was done with the intent that a murder be committed in violation of the laws of the State of New York.
>
> Third, that the defendant did so as consideration for the receipt of or as consideration for a promise or agreement to pay anything of pecuniary value.

7

>	And fourth, that the death of Xin Gu resulted from the murder-for-hire.

Tr. 2265.

With respect to the third element – the element most relevant to this motion, the government needed to prove that Mr. Abreu "intended that the murder be committed as consideration for the receipt of anything of pecuniary value. This element requires that *prior to the murder*, there was a mutual agreement, understanding, or promise that something of value would be exchanged for committing the murder. "Anything of value" means money, negotiable instruments, or anything else the primary significance of which is economic advantage." Tr. 2268 (emphasis added). The government needed to prove that Mr. Abreu "participated with the understanding based on a mutual agreement that he would receive in exchange something of pecuniary value. If, however, you find that there was no mutual agreement prior to the murder that something of value would be exchanged, then payments of money after the murder, standing alone, would not satisfy this element." *Id*.

"The consideration requirement in 18 U.S.C. § 1958 is interpreted in 'the traditional sense of bargained for exchange.'" *United States. v. Hardwick*, 523 F.3d 94, 99-100 (2d Cir. 2008) (citing *United States v. Wicklund*, 114 F.3d 151, 154 (10th Cir. 1997)). As with any bargained for exchange, there must be "a mutual understanding that something of value will be exchanged for committing a murder." *Id.* at 154. The Second Circuit has repeatedly held that there must be a mutual understanding of the form the consideration will take "***when the agreement was made***." *United States v. Babilonia*, 854 F.3d 163, 176 (2d Cir. 2017) (emphasis added). As Your Honor recently wrote in the Court's Order on defendants' Allen Yu and Zhang's motion for an acquittal,

8

"An unspecified future "favor" is insufficient to support a conviction for murder-for-hire." Dkt. 424, Order at 8, citing *United States v. Frampton,* 382 F.3d 213, 218-19 (2d Cir. 2004).

The government must prove that the intent of the *solicitor* of the murder for hire was "conveyed to and understood" by the hitman ***"at the time the defendant solicit[s] [the hitman] to commit the murder."*** *United States v. Davis*, 103 F. Supp. 3d 396, 404 (S.D.N.Y. 2015).

In *Davis*, Judge Katherine Forrest granted defendant's Rule 29 motion for acquittal, finding vague promises related to the commission of the murder insufficient to satisfy the remuneration element of 18 U.S.C. §1958 – though the government's evidence showed a $1,000 payment after the murder's commission. The Court held:

> The current record does not support an advance, before the murder, bargained for exchange or understanding of a quid-pro-quo involving something of pecuniary value between Davis and Wilson. It supports only that Davis would make the murder worth Wilson's while—in some unspecified way. While Davis's intent controls, the intent of the other party to the bargain cannot be irrelevant. If it were, the "as consideration for the receipt of, or as consideration for a promise or agreement to pay" language in the statute would become irrelevant. A murder-for-hire necessarily involves mutuality … In short there must be sufficient evidence that Davis hired Wilson to do the job—not just convinced or coerced him to do it based on a vague hope … Hiring in the §1958 sense involves agreement to murder *for* a pecuniary payment of promise of payment. Here there was no such hiring, though there was in fact a post murder payment. As the Government concedes, the promise or agreement that anything of pecuniary value would be provided in consideration for a murder is one which must occur prior to the murder itself.

*Id.*, at 404-405. *See also Frampton*, 382 F. 3d at 219.

B. <u>Evidence of Pre-murder Agreements to Kill Chris Gu</u>

i. *The promise from Allen Yu to You You and Zhe Zhang was impermissibly vague*

You You testified that Allen Yu represented that he would provide some sort of "favors" in the form of business contacts and connections – to You You and Zhe Zhang. Allen Yu made no

9

such representations as to Antony Abreu; indeed, there is no evidence in the record that Allen Yu had any idea Antony Abreu even existed. With no further detail, You You testified that Allen Yu was going to pass all his real estate connections and his supplier connections and some of the crew workers to let us run our own construction company." Tr. 700. The extent of the promise(s) were non-specific "connections" – "his real estate connections, clients, and construction worker crews and some of his supply connections." Tr. 701. You You testified that Allen Yu was going to give him "a contact for subcontractors, essentially, in exchange for killing his protégé;" however, You You could only claim Allen Yu "was going to link us up with his real estate connections, those big-time landlords with jobs and stuff as clients, and then he would hook us with some construction crews that he has and let us work for us, and he will give us the link with all the supply company in Flushing, all the lumber yards, all the supply connections. That's what he said." *Id*. When asked whether the agreement was for Allen Yu "to tell you the name of where he buys lumber in Flushing, that's what you're saying at the end?" You You responded "No. He's basically, what he's trying to say is he will tell them, okay, you to give us the connection, give us the account so we could buy the supplies and stuff on credit, like that." *Id*. Critically, there is no evidence or even any suggestion that these conversations involved Antony Abreu, in any manner, shape or form.

      The Second Circuit in *Frampton* explained that the sort of vague promise alleged in this case was not enough. The Court held that "The federal murder-for-hire statute does not speak in such colloquial terms. Moreover, the mere fact that the consideration offered by one (the solicitor) in exchange for another's (the murderer's) agreement to commit a murder *could* inure to the economic benefit of the latter is insufficient." *United States v. Frampton,* 382 F.3d at 219. "[T]here must be some evidence to establish that at the time the agreement was formed, the consideration was something the 'primary significance' of which lay in its 'economic advantage.'" *Id.* (citing

10

the statute).

The best You You could offer the jury was that Allen Yu would provide vague favors in exchange for a commitment to carry out the murder – but that does not meet the specific requirements to support a conviction under 18 U.S.C. §1958. Moreover, none of these "favors" – as ambiguous as they were – included any sort of remuneration for Antony Abreu. Accordingly, You You's vague representations about the contacts he would receive in exchange for commission of the murder do not satisfy the remuneration requirement of §1958.

### ii. *There was no evidence of a pre-murder agreement involving Antony Abreu*

The government offered no evidence at trial that connected Antony Abreu to the pre-murder discussions, such as they were, between Alan Yu, You You and Zhe Zhang. The evidence at trial simply demonstrated that Mr. Abreu received a watch from Zhang in the year *after* the murder. This does not establish the required element of a pre-murder promise required to establish the murder-for-hire because the record is devoid of any evidence that (1) there was ever a discussion, prior to Gu's murder – or thereafter – between Antony Abreu and anyone that indicated Abreu would be compensated for committing the murder; and (2) the watch that Mr. Abreu bragged about receiving was in any way connected to the murder of Chris Gu. Indeed, to argue otherwise does not pass the straight-face test. The jury is always reminded to bring their common sense into their deliberations – so too, respectfully, for Your Honor. When viewing the evidence in the light most favorable to the government, as the Court must, the question remains: Why would Zhang give Mr. Abreu an expensive watch in the year after the murder of Chris Gu – when the evidence educed at trial was unequivocal that Zhang received nothing but a vague and empty promise about contacts in the construction business – a field in which he and Abreu had no involvement whatsoever?

11

As counsel for Allen Yu correctly argued, "[w]ithout a promise of an identified agreement for something of pecuniary value in return for the murder, post-murder payments are irrelevant. They cannot be used to lend credulity to an otherwise legally deficient showing of a pre-murder promise." Dkt. 310, Post-trial motion of co-defendant Allen Yu at 17.

Ironically, the hitman in *Davis* surmised he would receive money and he was, in fact, paid. There, the evidence of the promised remuneration was vague, lacked the necessary mutuality and the Court found it to be insufficient to satisfy the "pre-murder" payment statutory requirement, as a matter of law. The facts here are demonstrably worse for the government; because unlike *Davis*, there is *zero* evidence that Mr. Abreu entered into a pre-murder agreement to kill Chris Gu and there is also no evidence that the watch Mr. Abreu bragged about 2½ years later – even if it was given to him by Zhang – was promised to him before the murder. It is uncontested that the pair were in the marijuana business together and in the absence of clear pre-murder agreement for Mr. Abreu to have committed the murder, a judgment of acquittal is required.

"Where the Government asks the jury to find an element of the crime through inference, the jury may not be permitted to conjecture or to conclude upon pure speculation or from passion, prejudice or sympathy." *United States v. Vernace*, 811 F.3d 609, 615 (2d Cir. 2016). Instead, those inferences must be "sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019). Nothing but impermissible conjecture and speculation support the notion that Mr. Abreu entered into an agreement to commit the murder in advance.

The government focused on Mr. Abreu's statement on Instagram that the watch was payment for "work" – but, as You You testified, he understood that "work" was a reference to marijuana. Tr. 706-07. The government's theory presupposes, again, with no evidentiary support,

12

that the watch was payment for the murder – though it is far more plausible that the watch was payment related to the marijuana business, in which Zhang and Abreu were involved together over many years. Even assuming the watch did serve as payment for the murder, *after-the-fact*, that provides no support for the government's ultimate position because it does not cure the absence of a pre-murder promise to commit the murder. Indeed, the government argument has no evidentiary basis in the record from which a legitimate inference could be drawn; rather, it is a theory – or a guess – for which there is no support in the trial record. In both *Davis* and *Frampton*, the Court has been unequivocal on the fundamental requirements necessary to support a conviction on either of the two counts leveled against Mr. Abreu. None of those requirements are met here.

## II. The Court Should Grant Mr. Abreu a New Trial

Pursuant to Fed. R. Crim. P. 33, Mr. Abreu moves for a new trial. Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." See Fed. R. Crim. P. 33. This rule:

> by its terms gives the trial court broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice. The district court must strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury. Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment. An example of exceptional circumstances is where testimony is patently incredible or defies physical realities, although the district court's rejection of trial testimony by itself does not automatically permit Rule 33 relief.
>
> The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted. Generally, the trial court

13

> has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances.

*See United States v. Ferguson*, 246 F.3d 129, 133-34 (2d Cir. 2001) (internal quotation marks and citations omitted).

It is respectfully submitted that a new trial is warranted to prevent the manifest injustice which occurred as a result of the government's inaccurate, misleading representations about Mr. Abreu supposedly being paid for the murder through "You You [giving] the money to Zhang and Zhang gave it to Abreu" and "Allen Yu only [paying Zhang] five figures in cash." Tr. 2215, 2218. Indeed, there was no evidence that Zhang was paid anything for the murder; You You admitted the money Zhang received from Allen Yu was reimbursement for the outstanding marijuana debt which You You owed Zhang and the payment had nothing to do with reimbursement for the murder. Tr. 702.

The government's argument can be characterized as inaccurate, imaginative, creative and/or misleading – but most critically, unsupported by any evidence. The end result is clear – that such a presentation had a prejudicial effect on the jury in Mr. Abreu's case. Accordingly, Mr. Abreu is entitled to a new trial. *See, e.g.*, *United States v. Clemente*, 2004 U.S. Dist. LEXIS 627, at *21-22 (S.D.N.Y. 2004) ("Where a court concludes that despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury. Here, we conclude that permitting that verdict to stand under the facts of this case would result in a manifest injustice to the Defendant.") (internal citations omitted).

**III.   Mr. Abreu Joins in Defendants Yu and Zhang's Post-Trial Motions**

Mr. Abreu joins the motions of his codefendants in their post-trial motions to the extent they benefit him – specifically with respect to the government's constructive amendment and prejudicial variance.

## CONCLUSION

For the foregoing reasons, Antony Abreu's motion for a judgment of acquittal under Rule 29 should be granted, or, in the alternative, a new trial should be ordered.

Dated:      Brooklyn, New York
            May 31, 2024

                                                Respectfully submitted,

                                                 /s/ Susan G. Kellman

                                                Susan G. Kellman

                                                Eylan Schulman

TO:    Breon S. Peace, Esq.
       United States Attorney
       Eastern District of New York

Attn:  Devon Lash, Gabriel Park, Eric Silverberg
       Assistant United States Attorneys